**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

MICHAEL L. MILLER,           )
                                           )
            Plaintiff,        )
                                           )
vs.                            )     Case No. CIV-09-644-M
                                           )
ILLINOIS TOOL WORKS, INC., and  )
PASLODE CORPORATION,      )
                                           )
            Defendants.    )

## ORDER

Before the Court is defendant Illinois Tool Works Inc.'s ("ITW") Motion *in Limine* to Exclude the Testimony of Charles Powell, filed April 29, 2011. On May 20, 2011, plaintiff filed his response, and on May 27, 2011, ITW filed its reply. Also before the Court is ITW's Motion *in Limine* to Exclude Reference to Any Alleged Defect in Charles Powell's Nailer, filed May 27, 2011. On June 3, 2011, plaintiff filed his response, and on June 8, 2011, ITW filed its reply. An evidentiary hearing was held on June 8, 2011, during which Mr. Powell, plaintiff's expert, testified.

I.     Motion in Limine to Exclude the Testimony of Charles Powell

At the hearing, Mr. Powell set forth the following as his opinions in this case: (1) the subject nailer has a manufacturing defect in that the spring in the lockout bar assembly was oversized and causes the lockout bar assembly to jam; (2) the subject nailer has a design defect in that the design of the nailer allows nails to be ejected in an uncontrolled fashion when only a few nails are left in the nailer's magazine and the lockout bar jams; and (3) safety glasses would not have protected plaintiff's eye if he had been wearing them. ITW has moved to exclude the testimony of Mr. Powell as to all of the above opinions. Specifically, ITW challenges the factual basis for Mr. Powell's manufacturing defect opinion, the qualifications of Mr. Powell to render the design defect opinion,

and the reliability of the principles and methodology underlying Mr. Powell's design defect opinion, and ITW asserts that there has been no evidence, no facts, and no testing introduced to support Mr. Powell's opinion regarding the protection afforded by safety glasses.

Federal Rule of Evidence 702 governs the admissibility of scientific or technical expert testimony. It provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999), the Supreme Court concluded that "*Daubert*'s general holding – setting forth the trial judge's general 'gatekeeping' obligation – applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141. With respect to the all-important reliability determination, the Supreme Court further concluded that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* (emphasis in original).

Several factors may be considered by the trial court in assessing the reliability of proposed expert testimony. The "*Daubert* factors" that *may* be considered are: (1) whether the theory or technique employed by the expert in formulating his expert opinion can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error; (4) whether standards control operation of the technique; and (5) whether the theory or technique is generally accepted within the relevant professional community. *Id.* at 149-50 (quoting *Daubert*, 509 U.S. at 592-94). In *Kumho Tire*, the Court recognized that in some cases "the relevant reliability concerns may focus upon personal knowledge or experience," rather than scientific foundations. *Id.* at 150. In such cases, the trial court may focus on alternative factors that are better-suited to the specific type of expertise at issue. *Id.* at 150-52. "The objective of [the gatekeeping] requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. "[T]he trial judge [has] considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.*

Further, when expert testimony is challenged under *Daubert*, the burden of proof regarding admissibility rests with the party seeking to present the testimony. *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1210 (10th Cir. 2004). "The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community. Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion

is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements." *Id.* (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir. 1999)).

A.      Manufacturing defect opinion

ITW contends that Mr. Powell's manufacturing defect opinion is inadmissible because it lacks any factual basis. Specifically, ITW contends that Mr. Powell is merely assuming, without any factual basis, that the oversized spring is the original spring with which the nailer was manufactured when the evidence clearly indicates that it was not. While Mr. Powell did testify that he does not know if the oversized spring is the original spring with which the nailer was manufactured, he also testified that based upon his microscopic analysis of the lockout bar assembly and spring, the spring had been in the nailer for a long period of time. Having carefully reviewed the parties' submissions, and having heard the testimony of Mr. Powell, the Court finds that Mr. Powell's manufacturing defect opinion is based upon sufficient facts. The Court further finds that any shortcomings in the factual basis for Mr. Powell's opinion go to the weight, and not the admissibility, of Mr. Powell's testimony regarding his manufacturing defect opinion and that during cross-examination, ITW may thoroughly question Mr. Powell regarding all of the alleged shortcomings and errors it contends exist in Mr. Powell's manufacturing defect opinion. Accordingly, the Court finds that any testimony by Mr. Powell regarding his manufacturing defect opinion should not be excluded.

B.      Design defect opinion

ITW contends that Mr. Powell has no specialized training or experience that qualifies him to provide expert testimony on whether the design of the nailer at issue is defective. Having reviewed the parties' submissions, and having heard the testimony of Mr. Powell, the Court finds that Mr. Powell is qualified to testify regarding whether the design of the nailer at issue is defective.

Mr. Powell is a registered professional engineer and has over thirty years of experience as a failure analyst. Additionally, Mr. Powell has previously worked in his capacity as a failure analyst in other nailer cases.

ITW also contends that the principles and methodology behind Mr. Powell's design defect opinion are not reliable. Having carefully reviewed the parties' submissions, and having heard the testimony of Mr. Powell, the Court finds that Mr. Powell's design defect opinion is the product of reliable principles and methods and that Mr. Powell applied these principles and methods reliably to the facts and/or data in this case. Mr. Powell visually inspected, disassembled, measured, photographed, and examined the subject nailer and its component parts. Mr. Powell also reviewed the nailer manuals and compared the technical drawings supplied by ITW to the subject nailer. The Court would further note that defendant's expert, Dr. Robert S. Cargill, II, utilized these same principles and methodology in rendering his opinions. While ITW disagrees with the ultimate conclusions Mr. Powell reached as a result of his investigation and alleges various shortcomings of in Mr. Powell's design defect opinion, the Court finds said shortcomings go to the weight, and not the admissibility, of Mr. Powell's testimony regarding his design defect opinion and that during cross-examination, ITW may thoroughly question Mr. Powell regarding all of the alleged shortcomings and errors it contends exist in Mr. Powell's design defect opinion. Accordingly, the Court finds that any testimony by Mr. Powell regarding his design defect opinion should not be excluded.

C. Opinion regarding safety glasses

At the hearing, Mr. Powell stated that he would be rendering an opinion regarding whether safety glasses would have protected plaintiff's eye from injury. Other than this one statement, no

other testimony or other evidence was introduced during the hearing regarding this opinion, the factual basis for this opinion, the principles or methodology Mr. Powell utilized in forming his opinion, or the qualifications of Mr. Powell to render this opinion.  Additionally, in none of his three expert reports issued in this case does Mr. Powell set forth any opinion regarding whether safety glasses would have protected plaintiff's eye from injury.  Based upon this lack of evidence, the Court finds that plaintiff has not satisfied his burden of proving the admissibility of Mr. Powell's opinion regarding safety glasses.  Accordingly, the Court finds that any testimony by Mr. Powell regarding safety glasses should be excluded.

II.      Motion in Limine to Exclude Reference to Any Alleged Defect in Charles Powell's Nailer

ITW moves this Court to preclude Mr. Powell from testifying regarding an alleged defect in a Paslode impulse cordless framing nailer he purchased on eBay ("Powell exemplar nailer").  Because the alleged defect in the Powell exemplar nailer is different from the alleged defect in the subject nailer, ITW contends that any testimony regarding the alleged defect in the Powell exemplar nailer will not assist the jury in determining any fact in issue, would be unfairly prejudicial to ITW, and would be misleading and confusing to the jury and, therefore, should be excluded.  In his response, plaintiff asserts that Mr. Powell has not conceded that the alleged defects in the two nailers are different.  Plaintiff also asserts that the video of the testing Mr. Powell performed on the Powell exemplar nailer is relevant and admissible.

> As a general rule, the proponent seeking to admit out-of-court experiments into evidence must demonstrate a similarity of circumstances and conditions between the tests and the subject of litigation. The purpose of this rule is to prevent confusion of the jury. A recognized exception to this rule exists when the experiment merely illustrates principles used to form an expert opinion. In such instances, strict adherence to the facts is not required.

*Gilbert v. Cosco, Inc.*, 989 F.2d 399, 402 (10th Cir. 1993) (internal quotations and citations omitted).

Contrary to plaintiff's assertion, Mr. Powell twice testified during the hearing that the Powell exemplar nailer had a different defect than the subject nailer in this case. Mr. Powell further testified that the lockout bar in the Powell exemplar nailer was in a different condition than that of the lockout bar in the subject nailer. Additionally, based upon Mr. Powell's testimony, the Court finds that the test firing of the Powell exemplar nailer was not for the purpose of illustrating the principles used to form Mr. Powell's opinion but was for the purpose of demonstrating the alleged defect in the Powell exemplar nailer.

Based upon the above, the Court finds that any testimony or evidence regarding the Powell exemplar nailer should be excluded. Specifically, the Court finds that because the alleged defects in the two nailers are different, any evidence regarding the Powell exemplar nailer is not relevant, will not assist the jury in determining any fact in issue, would be unfairly prejudicial to ITW, and would be misleading and confusing to the jury.

III.    Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART ITW's Motion *in Limine* to Exclude the Testimony of Charles Powell [docket no. 95] as follows: the Court GRANTS the motion as to any testimony by Mr. Powell regarding safety glasses and DENIES the motion as to any testimony by Mr. Powell regarding his manufacturing defect

opinion and his design defect opinion. Further, the Court GRANTS ITW's Motion *in Limine* to Exclude Reference to Any Alleged Defect in Charles Powell's Nailer [docket no. 110].

**IT IS SO ORDERED this 10th day of June, 2011.**


VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE